Jacobson *against* The Executors of Le Grange.

NEW-YORK,
May, 1808.

Jacobson
v.
Executors of
Le Grange.

THIS was an action for work and labour, and services performed by the plaintiff for the testator. The cause was tried before Mr. Chief Justice *Kent*, at the *Albany* circuit, in *October*, 1807.

On the trial, the following facts were proved. The parents of the plaintiff were about putting him to a trade in 1790, when the testator, who was his uncle, requested them to let him take the plaintiff as his own child, for he would do better for him than his parents could. The plaintiff was then about eighteen years old, and his parents after some hesitation, consented to let him go and live with his uncle who said, that at his death he would do by him as his own child. He lived with the testator, and worked for him eleven years and eight months. The plaintiff lived in the testator's family and was maintained and clothed by him as one of his children. The plaintiff, after he was married, lived about six years in the testator's family, and had two children born in the mean time. It did not appear that the testator had ever promised to pay the plaintiff for his services. It was proved that he said that the plaintiff should be one of his heirs. In a conversation with the mother-in-law of the plaintiff, the testator proposed to purchase a farm for the plaintiff, worth 600*l.* and that he would pay 350*l.* towards the purchase, saying that would be a fair compensation for the plaintiff's services.

From the evidence offered on the part of the defendants, it appeared that the plaintiff had expressed a desire that the tessator should make his will, and after his decease wished to see it ; but never mentioned any claim on the testator. The defendants also gave in evidence a promissory note from the plaintiff to the testator for 50 dollars, dated the 13th *May*, 1805. A verdict was taken by

Where a young man at the request of his uncle, went to live with him, and the uncle promised to do by him as his own child ; and he lived and worked for him above eleven years, and the uncle said that his nephew should be one of his heirs, and spoke of advancing a sum of money to purchase a farm for him, as a compensation for his services, but died without devising any thing to the nephew, or making him any compensation, it was held, that an action on an implied *assumpsit* would lie against the executors for the work and labour performed by the nephew, for the testator.

NEW-YORK,
May, 1808.

Jacobson
v.
Executors of
Le Grange.

consent, for the plaintiff, subject to the opinion of the court, on a case containing the above facts.

*Van Vechten,* for the defendant. The only question is, whether the declaration is supported by the evidence. The plaintiff went to live with the testator voluntarily, and on the mere expectation of being made the heir of his uncle. He consented that his remuneration, if any, should depend upon the good will of the testator. This is evident from the testimony of the witnesses, and the whole conduct of the parties. The work and labour, therefore, performed by the plaintiff, must be considered as a voluntary courtesy, and not as creating an implied *assumpsit,* on the part of the testator to pay.

In the case of *Osborne* v. *The Governors of Guy's Hospital,** it was expressly decided, that where a person does business, or performs services for another, under the expectation of being compensated by a legacy, he cannot afterwards resort to an action. *Assumpsit* will not lie on a general promise of a legacy.

* Strange, 28.
Bull. N. P. 145.

*Henry,* contra. From the evidence in the case, the plaintiff is entitled to an action on the *quantum meruit.* It is enough, *prima facie,* to show labour performed, to raise the implied *assumpsit* to pay for it. The witnesses state, that the testator promised to do by the plaintiff as if he were his own child ; that he proposed to purchase a farm, and to pay 350*l.* which he considered no more than a compensation for his services. It is clear, then, that a compensation was intended, if not promised to the plaintiff. It would be countenancing fraud and deception, if one person were allowed to induce another to perform services for him, by a promise of recompense in his will, and afterwards take no notice of him when he comes to make his will.

The case cited from *Strange* is a *dictum* of Lord *Raymond* at *Nisi Prius.* If it were clearly the understanding of the parties that the services should be gratuitous, it is true, no action would lie. But in the present case, the plaintiff went to live with the testator *at his request,* and

under an encouragement, if not a promise of compensation.

VAN NESS, J. delivered the opinion of the court. The only question in this cause is, whether the services performed by the plaintiff were rendered with a view to any other compensation than such as the testator should voluntarily make by his last will and testament. This is a mere question of fact, and the defendants having consented that the jury should find for the plaintiff, it is difficult to conceive upon what ground the court are expected to interfere. There is no objection made to the charge of the judge; no principle of law has been violated; justice has been done, and the damages found by the jury are not more than the evidence will warrant.

The only ground upon which the court can possibly interfere is, that there was no evidence at all to support the verdict of the jury. That the intestate and plaintiff contemplated, that the latter should be remunerated in some way for his long and faithful services, is not to be denied; but it is said, that such remuneration depended wholly on the will and pleasure of the testator, and that this must have been the understanding of both parties. The jury by their verdict have negatived that idea, and in doing so, were well warranted by the evidence. The services having been performed for the benefit of the testator with his knowledge and approbation, the law implies a promise to pay for them, unless the plaintiff can show that payment was never intended. The testimony of the plaintiff's mother-in-law appears to me to be decisive on this point; and, independent of the defendant's consent to this verdict, I cannot conceive how the jury could find otherwise than they have done.

The testator, when the plaintiff became his adopted child, probably intended to devise to him his whole estate. Shall the change of circumstances, by the unexpected birth of a child, deprive the defendant of a reasonable compensation for having spent the prime of his life in the

NEW-YORK,   service of the testator? Under the circumstances of the
May, 1808.   case we think it ought not.

Mason          By this decision we do not mean to draw in question
v.          the general rule of law contended for by the defendant's
Franklin.   counsel on the argument.

We are of opinion, from the evidence in the cause,
that it is not within that rule. The motion for a new trial,
therefore, must be denied.

Rule refused.